UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| TYLER ANDERSON )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>)<br>)<br>)<br>UNIVERSITY OF NEW ENGLAND )<br>)<br>    Defendant ) | Civil Action No. 2:21-cv-00169-GZS<br><br>PLAINTIFF'S AMENDED COMPLAINT FOR NEGLIGENCE TITLE IX HARASSMENT, AND RETALIATION, BREACH OF CONTRACT |

NOW COMES, Plaintiff Tyler Anderson ("Anderson" or "Plaintiff"), by and his attorney, the Law Office of Guy D. Loranger, to complain against Defendant University of New England ("UNE") as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Anderson is a resident of Massachusetts

2. Defendant UNE operates a college with campuses in Biddeford and Portland, Maine.

3. Jurisdiction is based on diversity and federal questions. The damages in the case exceed $75,000.

4. Plaintiff requests a jury trial.

## ALLEGATIONS

5. Anderson attended UNE as a student from 2015 to 2018.

6. In the fall of 2018, Anderson began his senior year at UNE.

1

7. Anderson's class schedule included a Biochemistry class with Professor Deena Small ("Small")

8. During the first day of class, Small made eye contact with Anderson followed with a smile.

9. At the next class, Small greeted Anderson with a big smile, like she knew him and was glad to see him. Small also brushed by Anderson, asking how he was doing. By her greeting, Anderson assumed the two had met somewhere in school, but he forgot her name. Throughout the class, Anderson was preoccupied with trying to figure out how they knew each other.

10. On or about September 5th, at the beginning of class, Small again greeted Anderson with a big "hello" and used his name. During the class, Anderson believes he received inappropriate eye contact with an occasional smile. Anderson spent much of the class wondering why he was receiving such attention.

11. On or about September 7th, Small met Anderson with another greeting, again causing Anderson to believe that Small singled him out. He therefore changed his seat and contemplated changing classes.

12. On or about September 10th, Small approached Anderson after class and asked him how he liked the class. Small then noted that Anderson was smart, attractive and should do well after graduation. Small also commented that she like the way Anderson dressed. As Anderson left, Small gave his arm a slight squeeze before leaving and dropping her hand.

13. On or about September 12th, Small asked Anderson to see her after class. He waited. Small then asked how Anderson how was doing, and said he looked sharp. Small also asked how often Anderson worked out and added that it shows and touched his arm.

14. On or about September 13th, Anderson missed some classes because of a bad headache from tension and anxiety.

15. On or about September 14th, as class ended, Small made eye contact with Anderson and used her hand to signal for him to stay. Small then came within a few feet of Anderson and said let us chat, but not here, meet me at a restaurant. Anderson said he would not remember the name, so he asked Small to text him with the name. Small said that she currently did not have the capability. Anderson said the time would not work because he planned to return home to Massachusetts for the weekend and wanted to beat the traffic. Small said they could figure out a time when they have their next class.

16. On or about September 17th, after class ended, Small spoke to Anderson and suggested they meet at Alex Pizza. Anderson then drove to Alex Pizza and parked on the same side of the street as Alex Pizza. Small arrived in a gray Toyota and pulled up next to him. Small suggested they go somewhere else, so Anderson got into her car. They rode for about 20 minutes and ended up at a coffee shop. The coffee shop had double doors and the interior was brown, and they sat at a booth, sitting on the opposite side. Anderson ordered coffee. Their legs touched and Small touched Anderson's hand. Small asked if there was any attraction, Tyler said he was not interested. Small suggested going for drinks. Anderson declined. Anderson paid for his coffee. Small was not happy with Anderson's response. After about 15 minutes, Small took Anderson back to Alex's Pizza where he got his car and went back to campus.

17. Later that evening, Anderson spoke to his father. During the call, Anderson's father noticed a distinct change in Anderson's demeanor and a flatness in his voice. Also, a lack of enthusiasm.

18. On or about September 18th, Anderson again spoke to his father. His father was concerned regarding the previous night's call. When his father asked if something was wrong, Anderson responded he did not want to talk about it.

19. On or about September 19th, Small approached Anderson at the entrance to the lecture hall and asked if he had thought about things. Anderson asked, "is this about a relationship?" She replied, "could be, or something more casual." Anderson rejected Small, explain she was not what he was looking for in a woman, and he also needed to focus on his studies. He said he considered dropping her class. She was not happy. Her personality changed.

20. On or about September 19th, due to Small's advances, Anderson missed some classes and stayed in his dorm. He subsequently periodically missed the biochemistry class.

21. On or about September 26th, Anderson's father accessed Anderson's UNE account, hoping to determine the reason for his son's unusual behavior. The father discovered an email communication between the Biochemistry Department regarding his son's failure to seek certification for lab safety. The father, however, found no issues with other classes, seeing only pleasant emails with other professors.

22. By the end of September, due to Small's advances, Anderson was depressed and thinking about dropping the Biochemistry class.

23. On or about September 30th Anderson's parents went to visit him because of his recent behavior. During the visit, Anderson broke down in tears, but would not reveal the cause of his distress.

24. On or about October 1st. Anderson's father contacted his son's physician, believing intervention was necessary.

25. On or about October 2nd, the Academic Dean Keirstead ("Keirstead") sent an email to Small asking her to reach out to Anderson.

26. On or about October 11th, Keirstead again communicated with Small to attempt to help Anderson.

27. At this point, Small obviously knew her behavior was unethical and had caused severe damage to Anderson, resulting in his current emotional state and academic struggles.

28. Small, unfortunately, did not take responsibility for her unethical actions. Small, instead, began to retaliate retaliated against Anderson for his refection of her advances.

29. Initially, Small labeled Anderson a threat to her safety. Specifically, Small told Keirstead of her intent to contact the Director of Security because she felt threatened by Anderson.

30. Over the next month, Small continued to retaliate against Anderson for rejecting her advances by not allowing Anderson's reasonable academic requests to make up assignments and withdraw from her class.

31. Small also continued to defame Anderson by continuing to label him a threat to her safety.

32. In response to Small's false allegation of Anderson threatening her safety, on or about November 1st, Keirstead gave Small a panic button. Keirstead provided the panic button despite the Dean's Office's Security finding that Anderson posed no threat to Small.

33. Small's retaliatory and false allegations against Anderson, unfortunately, became public knowledge on campus, thus causing further damage to Anderson.

34. On or about November 8th, due to Small's retaliation, Anderson filed a Title IX complaint with UNE, and he requested to withdraw from Small's class and that Small cease and desist with her retaliatory behavior.

35. Despite Anderson's Title IX complaint, Small continued to retaliate against Anderson. For example, on or about November 12th, Small began to have a security person escort her to class and then sit in on the lecture. The presence of the security officer further caused UNE students to view Anderson as a threat on campus.

36. In November, in retaliation for his Title IX complaint, without cause or due process, UNE evicted Anderson from his dorm. UNE's retaliatory eviction false further the portrayal of Anderson as a threat on campus.

37. Due to the false portrayal of Anderson as a threat on campus, students allegedly armed themselves with knives to defend themselves from Anderson.

38. On or about December 4th, due to UNE and Small false portrayal of Anderson as a threat on campus and students arming themselves, Anderson's father spoke to UNE's Head of Security to request an investigation into the matter.

39. In December of 2018, without cause or due process, UNE further retaliated Anderson by evicting him from campus, forcing him to live in a nearby hotel and attend classes remotely.

40. In December of 2018, UNE claims it completed its investigation into Anderson's Title IX complaint.

41. UNE's investigation into itself, however, did not even investigate the retaliation of UNE and Small.

42. On or about January 2, 2019, Anderson's father notified UNE of errors in the investigative report.

43. Due to the harassment and retaliation, UNE forced Anderson to withdraw from UNE.

44. In her conduct as a professor at the school, Small was always acting under the color of State Law as an agent and an employee of UNE.

45. Small was acting in the course and scope of her duties as a professor during the time she engaged in this conduct with Plaintiff.

46. Small's conduct towards Anderson in bad faith, with malice and/or reckless disregard for the emotional and/or physical health of Anderson and constitutes egregious and outrageous behavior.

## **COUNT III NEGLIGENCE**

47. Plaintiff repeats and asserts the allegations above as though fully set forth herein.

48. UNE's student policies and handbook assure students, such as Anderson, that it does not tolerate harassment or retaliation, and UNE assumed a duty to respond to complaints of harassment and retaliation in a reasonable, non-retaliatory manner.

49. Anderson filed a Title IX complaint of harassment and retaliation with UNE.

50. In response, UNE breached its subject duty by negligently responding to Anderson's complaint and failing to investigate the complaint in a reasonable, non-retaliatory manner.

51. Specifically, in response to Anderson's complaint, UNE negligently created a perception on campus of Anderson as a safety threat, fueled the perception of Anderson as a safety threat, evicted Anderson from his dorm, and then evicted Anderson from campus, negligently investigated his Title IX claim, all forced Anderson to withdraw from UNE.

52. As a result of UNE's negligence, Anderson has suffered damage including those set forth in the prayer for damages.

## COUNT V - TITLE IX QUID PRO QUO HARASSMENT

53. Anderson incorporates by reference the allegations in the above paragraphs.

54. Small engaged in quid pro quo sexual harassment by making advances to Anderson and then taking retaliatory actions against Anderson after he rejected her overtures.

55. In response to the harassment, Anderson gave actual notice to UNE of the harassment by filing a Title IX complaint with UNE's Title IX officer who had the authority to institute corrective measures.

56. UNE responded to Anderson's Title IX complaint with deliberate indifference.

57. Specifically, UNE exhibiting hostility towards Anderson by negligently responding to the complaint, intentionally creating a false perception of Anderson as a threat on campus, intentionally fueling the perception of Anderson as a safety threat, evicting Anderson from his dorm, evicting Anderson from campus, and forcing Anderson to withdraw from UNE.

58. The illegal conduct by Small and UNE's behavior exhibited a conscious disregard for Anderson's civil rights and provides a basis for punitive damages.

59. As a result of the illegal conduct, Anderson has suffered damages as set forth below.

## COUNT VI:  TITLE IX RETALIATION

60. Anderson incorporates by reference the allegations in the above paragraphs.

61. Anderson engaged in protected activity by filing a Title IX complaint.

62. UNE knew of Anderson's protected activity.

63. After Anderson engaged in protected activity, Anderson suffered adverse school-related actions.

64. The adverse school related actions include school related actions include UNE negligent response to Anderson's complaint, UNE intentionally created a false perception of Anderson as a threat on campus, UNE intentionally fueled the false perception of Anderson as a safety threat, UNE evicted Anderson from his dorm, UNE evicted Anderson from campus, UNE forced Anderson to withdraw from UNE.

65. A causal connection exists between the Anderson's protected activity and the adverse school related actions.

66. Defendants' conduct exhibited a conscious disregard for Title IX.

67. As a result of Defendants' conduct, Anderson has suffered damages as set forth below.

## COUNT VII: BREACH OF CONTRACT

68. Anderson incorporates by reference the above paragraphs.

69. In exchange for payment of tuition, UNE's student handbook creating a contract with Anderson which consisted of UNE providing Anderson a professional academic environment atmosphere with mature competent professors.

70. UNE breached the contract by failing to provide him with the environment as advertised given the quid pro quo harassment, the false portrayal of him as a threat on campus, the various acts of retaliation, his unjust eviction from his dorm and campus, the faulty investigation, all of which forced Anderson to withdraw from UNE.

71. UNE's breach of contract caused the Anderson to suffer damages as alleged below in the prayer for damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court (1) enter judgment of favor of the Plaintiff and (2) award damages sufficiently large to compensate for

damages he has suffered as a result of Defendants' conduct including, but not limited to, damages for general and non-economic damages, economic damages, prejudgment and post judgment interest, lost wages, punitive damages, costs of this suit, including reasonable attorney fees and costs, and such further relief the Court may deem proper.

Dated: February 14, 2022                                  /s/ Guy D. Loranger
                                                          Guy D. Loranger, Esq. Bar No.9294
                                                          Attorney for Plaintiff

                                                          Law Office of Guy D. Loranger
                                                          1 Granny Smith Court, Suite 3
                                                          Old Orchard Beach, Maine 04064
                                                          (207) 937-3257