# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TYLER ANDERSON, | ) |
|               Plaintiff, | ) |
| v. | ) Docket no. 2:21-cv-00169-GZS |
| UNIVERSITY OF NEW ENGLAND, | ) |
|               Defendant. | ) |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant University of New England's Motion to Dismiss (ECF No. 18). Having reviewed the Motion and the related submissions filed by the parties (ECF Nos. 21 & 22), the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

### I.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In evaluating whether a complaint states a plausible claim, [the Court] perform[s] [a] two-step analysis." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (internal quotation marks omitted). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Morales-Cruz v. University of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678). Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 224 (quoting Iqbal, 556 U.S. at 678). "This standard is 'not akin to a "probability requirement," but it asks for

more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Squeri v. Mount Ida Coll., 954 F.3d 56, 66 (1st Cir. 2020) (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

"An analysis of plausibility is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Medina-Velázquez v. Hernández-Gregorat, 767 F.3d 103, 109 (1st Cir. 2014) (internal quotation marks omitted). However, "the court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556). Rather, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability" from the facts. Id. at 13.

## II.    BACKGROUND

Plaintiff Tyler Anderson, a Massachusetts resident, began attending the University of New England ("UNE") as a student in 2015. (Am. Compl. (ECF No. 16), PageID # 91.) In the fall of 2018, Anderson began his senior year with a class schedule that included a biochemistry class with UNE Professor Deena Small. (Id., PageID #s 91-92.)

During the first meeting of this biochemistry class, Small made eye contact with Anderson and smiled. At next meeting, Small greeted Anderson with a "big smile," "brushed by Anderson," and asked him how he was doing. (Id., PageID # 92.) These initial interactions left Anderson "preoccupied" with trying to figure out whether he and Small had met previously. (Id.) Similar interactions continued. During the September 5th class, Small "greeted Anderson with a big 'hello' and used his name." (Id.) During the September 7th session, Small "met Anderson with

another greeting." (Id.)  At this point, Anderson decided to change his seat and contemplated changing classes, believing the professor had "singled him out." (Id.)

Despite Anderson's relocation, Small sought to engage him in conversation after two subsequent classes.  After the September 10th session, Small approached Anderson and asked him how he liked the class.  She told Anderson that he was "smart, attractive and should do well after graduation." (Id.)  She also complimented Anderson on "the way [he] dressed" and lightly squeezed his arm. (Id.)  At the September 12th class, Small asked to see Anderson after class.  In this post-class meeting, Small asked Anderson how he was doing and commented that he "looked sharp." (Id.)  The professor asked Anderson how often he worked out, remarked that it showed, and again touched his arm.  The next day, Anderson missed several classes due to a headache induced by tension and anxiety.  (Id., PageID # 93.)

At the conclusion of the September 14th class, Small approached Anderson and invited him to meet her at a restaurant.  Anderson ultimately declined, citing his plan to drive home to Massachusetts for the weekend.  Small suggested they could figure out another time during the next class.

The following week, Small renewed her invitation, suggesting that they meet at a local pizza parlor.  Anderson agreed and drove to the establishment, but when Small arrived, she suggested that they go somewhere else.  Anderson then got into Small's car and they drove to a coffee shop. At the coffee shop, their legs touched under their table and Small touched Anderson's hand.  Small asked Anderson if he was attracted to her, and Anderson replied that he was "not interested." (Id.)  When Small suggested that they go for drinks, Anderson demurred.  Anderson sensed that Small was "not happy" with his responses. (Id.)  After another fifteen minutes, Small drove Anderson back to his car.

On September 19th, Small approached Anderson at the lecture hall's entrance and asked if he had thought things over. Anderson responded, "[I]s this about a relationship?" (Id., PageID # 94.) To which Small replied, "[C]ould be, or something more casual." (Id.) Anderson rebuffed Small again, explaining that she was "not what he was looking for in a woman" and that he needed to prioritize his studies. (Id.) He also told the professor that he had considered dropping her class. Anderson stayed in his dormitory the rest of the day, missing several classes. He periodically missed Small's biochemistry class moving forward.

By the end of September, Anderson was depressed and was continuing to consider dropping Small's class. On October 2nd, a UNE dean emailed Small asking her to reach out to Anderson. (Id., PageID # 95.) On October 11th, the same dean again reached out to Small about Anderson. At this point, Small informed the dean that she intended to contact UNE's security department because she felt threatened by Anderson.

Over the next month, Small rejected requests from Anderson to make up assignments and to withdraw from her class. On November 1st, despite a finding by UNE's security department that Anderson posed no threat to Small, UNE issued the professor a panic button. Around this same time, Small's allegations against Anderson became public knowledge on campus.

On November 8, 2018, due to Small's actions, Anderson filed a Title IX complaint with UNE and further requested to withdraw from Small's class and for the professor to "cease and desist with her retaliatory behavior." (Id.) Beginning November 12th, a security officer accompanied Small to her biochemistry lectures. (Id., PageID # 96.) Later that month, UNE evicted Anderson from his dormitory. (Id.)

During this period, other UNE students allegedly armed themselves with knives to defend themselves from Anderson. On December 4th, Anderson's father spoke with UNE's head of

security and requested that UNE investigate the "portrayal of Anderson as a threat on campus" and the alleged knife-wielding students. (Id.) Later that month, UNE evicted Anderson from campus and required him to attend classes remotely while living in a nearby hotel.

In December 2018, UNE claimed to have completed its investigation into Anderson's Title IX complaint. On January 2, 2019, Anderson's father notified UNE of errors in UNE's investigative report. Anderson also asserts that UNE's investigation failed to consider the retaliation he experienced from Small and UNE. Ultimately, Anderson withdrew from UNE. Anderson cited the "harassment and retaliation" he experienced as the reason for his "forced" withdrawal prior to graduation. (Id.)

### III. DISCUSSION

Anderson initially filed suit against UNE in June 2021. (See Compl. (ECF No. 1).) Via his Amended Complaint (ECF No. 16),[1] Anderson presses four claims against UNE. Two claims arise under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.: (1) Quid Pro Quo Harassment (Count V) and Retaliation (Count VI). Additionally, Plaintiff asserts claims for Negligence (Count III) and Breach of Contract (Count VII).[2]

---

[1] See generally 2/1/22 Order on Motion to Dismiss (ECF No. 15) (granting dismissal without objection as to Counts I, II, IV & VIII of original Complaint while also giving Plaintiff leave to file an amended complaint as to other claims) & 2/15/22 Endorsement Order (ECF No. 17) (denying remainder of initial motion to dismiss in light of Plaintiff's filing of his Amended Complaint).

[2] Applying Maine's choice-of-law test, the Court readily concludes Maine law governs the resolution of these two common law claims. See, e.g., Long v. Fairbank Farms Reconstruction Corp., 824 F. Supp. 2d 197, 199-201 (D. Me. 2011) & Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1165-66 (Me. 2003) (both applying Maine's significant contacts and relationships approach). In this case, the weight of the contacts favors the application of Maine law. Maine is not only Defendant's domicile, it is also where the alleged negligent conduct and injury occurred and the place of performance of the alleged contract. See Restatement (Second) Conflict of Laws §§ 145, 146, 186 & 188. To the extent Plaintiff implies Tennessee substantive law governs, the Court disagrees. See Pl. Response (ECF No. 21), PageID #s 122-23.

UNE argues that the Amended Complaint fails to state a claim in any of these four counts. (See generally Def. Mot. (ECF No. 18).) The Court initially considers Defendant's arguments that Plaintiff fails to state any plausible claim under Title IX.

### A. Title IX Quid Pro Quo Harassment (Count V)

"Title IX creates an implied private right of action against federal funding recipients for money damages . . . when a Title IX funding recipient is deliberately indifferent to known acts of sexual harassment of a student by a teacher." Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 7 (1st Cir. 2020) (citations omitted). As Plaintiff acknowledges,[3] a quid pro quo sexual harassment claim under Title IX requires Plaintiff to show the following elements: (1) that he was subject to an unwelcome sexual advance and his reaction to this advance affected tangible aspects of his education; (2) that an appropriate person at the educational institution had actual notice of this harassment; and (3) that the institutional response amounted to deliberate indifference. See, e.g., Lipsett v. University of P.R., 864 F.2d 881, 898 (1st Cir. 1988) (defining quid pro quo harassment for purposes of Title IX); Klemencic v. Ohio State Univ., 263 F.3d 504, 510 (6th Cir. 2001) (describing the elements of a prima facie case under Title IX).

Here, Plaintiff has alleged that he was subject to unwelcome sexual advances by Small and that he filed a Title IX complaint with UNE on November 8, 2018. (See Am. Compl., PageID #s 94–95.) In seeking dismissal of Count V, Defendant focuses on the deliberate indifference element and argues that "the Amended Complaint lacks allegations demonstrating that Plaintiff was subject or more vulnerable to sexual harassment by the female professor due to UNE's actions upon receiving notice of this alleged sexual harassment." (Def. Reply (ECF No. 22), PageID # 146.) As the Supreme Court has explained, the defendant's "deliberate indifference must, at a minimum,

---

[3] See Pl. Response, PageID #s 123-24 (citing Bennett v. Pennsylvania Hosp. Sch. of Nurse Anesthesia, No. 01-cv-4098, 2002 WL 32341792, at *3 (E.D. Pa. Oct. 29, 2002).

cause students to undergo harassment or make them liable or vulnerable to it." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 645 (1999) (cleaned up). This standard requires a plaintiff to plausibly allege that the school's response to the student's report was "clearly unreasonable." Id. at 648–49.

In this case, Plaintiff's Amended Complaint falls short of this clearly unreasonable, deliberate indifference standard. First, the Amended Complaint characterizes UNE's response to the Title IX complaint as merely negligent. (See Am. Compl., PageID # 98.) However, the deliberate indifference standard demands a greater showing than mere negligence. See Porto v. Town of Tewksbury, 488 F.3d 67, 74 (1st Cir. 2007) (suggestion of negligence insufficient to establish deliberate indifference).

Factually, Plaintiff alleges that following his Title IX complaint, UNE had security personnel escort and supervise Small when she taught Anderson's class, evicted Anderson from on-campus housing, and then required him to live in a nearby hotel and attend classes remotely. (See id., PageID # 96.) The Amended Complaint frames some of these actions as retaliatory and suggests that UNE students viewed Anderson as a threat as a result of these actions. However, the Amended Complaint does not plausibly allege that any of these actions caused Anderson to suffer further sexual harassment or made him more vulnerable to sexual advances or reprisals by Small. Rather, UNE's actions reflect a response that sought to minimize any contact between Small and Anderson. In short, the Amended Complaint does not plausibly allege that UNE was deliberately indifferent following its receipt of Anderson's Title IX complaint. Therefore, Count V is subject to dismissal.

### B. Title IX Retaliation (Count VI)

Turning to Count VI, Plaintiff's Amended Complaint asserts a claim under Title IX for retaliation following his November 8th complaint. See Jackson v. Birmingham Bd. of Educ., 544

U.S. 167, 178 (2005) (recognizing that that "Title IX's private right of action encompasses suits for retaliation"). "[A] plaintiff may establish a prima facie case for a Title IX retaliation claim by alleging facts sufficient to show that [he] engaged in activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir. 2002).

In seeking dismissal of this claim, Defendant argues that Plaintiff's Amended Complaint lacks factual allegations that would establish the requisite retaliatory motive. However, Plaintiff counters that he has pled multiple adverse actions that Defendant took "[w]ithin days" of him filing his Title IX complaint and that the "temporal relationship" makes it plausible that he can establish a retaliatory causal link. (See Pl. Response (ECF No. 21), PageID #s 126–27.) Considering the allegations of the Amended Complaint "holistically," the Court finds it is plausible that Anderson's Title IX complaint played a substantial part in motivating the actions that UNE took in removing him from campus in the two months following his complaint.[4] Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 (1st Cir. 2014) (reversing a dismissal of a Title VII retaliation claim while acknowledging that "some pleadings may allege a temporal gap so attenuated as not to meet the plausibility standard for surviving motions to dismiss"). Thus, at the motion to dismiss stage, the Court agrees with Plaintiff that he has stated a plausible claim for Title IX retaliation and DENIES Defendant's Motion to the extent it seeks dismissal of Count VI.

---

[4] Defendant cites Doe v. Harvard Univ., 410 F. Supp. 3d 332 (D. Mass. 2019) for the proposition that "temporal proximity is not, by itself sufficient to establish causation." Def. Reply, PageID # 147. However, the Court notes that it finds Doe factually distinguishable to the extent that it involved the simple denial of applications, whereas Anderson alleges extraordinary steps to remove him from his dormitory and campus shortly after he filed his Title IX complaint. See Doe, 410 F. Supp. 3d at 335.

### C. Negligence (Count III)

Turning to Plaintiff's common law claims, in Count III, Plaintiff claims that UNE "assumed a duty to respond to complaints of harassment and retaliation in a reasonable, non-retaliatory manner" and thereafter breached that duty in its response and investigation of Anderson's Title IX complaint. (Am. Compl., PageID # 97.) Under Maine law, "[a] cause of action for negligence has four elements: (1) a duty of care owed to the plaintiff; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury." Bell v. Dawson, 82 A.3d 827, 831-32 (Me. 2013) (cleaned up). As to the first element, "[t]he existence of a duty is a question of law, as is the scope of that duty." Id. at 832.

Here, Defendant seeks dismissal of Plaintiff's negligence claim arguing that "Plaintiff's asserted duty has not been recognized as a matter of law as a duty of care a university owes to its adult students." (Def. Mot., PageID # 108.) In the context of the relationship between a student and an educational institution, the Law Court has recognized that students are analogous to business invitees and, as such, educational institutions owe their students "a duty to exercise reasonable care in taking such measures as [are] reasonably necessary for [their] safety in light of all then existing circumstances." Schultz v. Gould Acad., 332 A.2d 368, 370 (Me. 1975). In an apparent implicit acknowledgment that his allegations do not arise under this recognized duty of care, Plaintiff alleges that UNE assumed an additional duty, namely, a duty respond to student complaints of harassment and retaliation "in a reasonable, non-retaliatory manner." (Am. Compl., PageID # 97.) Plaintiff points to "UNE's student policies and handbook" as the source of this assumed duty. (Id.; see also Pl. Response, PageID # 121 ("Anderson alleges that UNE, through its student policies and procedures, assume a duty to reasonably respond, in a non-retaliatory manner, to student complaints regarding harassment and retaliation.").) However, Plaintiff has

9

not cited any Maine precedent that supports such an assumed duty and multiple other courts have declined to allow negligence claims against educational institutions based on this assumed-duty theory. See, e.g., John Doe v. Trs. of Dartmouth Coll., No. 21-cv-085-JD, 2021 WL 2857518, at *10 (D.N.H. July 8, 2021) (applying New Hampshire law to a suspended student's negligence claim); Humphries v. Pennsylvania State Univ., 492 F. Supp. 3d 393, 407 (M.D. Pa. 2020) (applying Pennsylvania law in declining to find that an antihazing policy created an assumed duty of care); Doe v. Vanderbilt Univ., No. 3:18-cv-00569, 2019 WL 4748310, at *19 (M.D. Tenn. Sept. 30, 2019) (applying Tennessee law to dismiss expelled student's negligence claims that were based on university's duties under its handbook and policies); Doe v. Syracuse Univ., 341 F. Supp. 3d 125, 142 (N.D.N.Y. 2018) (applying New York law to dismiss an expelled student's negligence claim); Doe v. Amherst Coll., 238 F. Supp. 3d 195, 229 (D. Mass. 2017) (applying Massachusetts law and finding no "duty in tort . . . to ensure compliance with the terms in the *Student Handbook"*).

In short, the Court agrees with Defendant that Plaintiff has failed to state a plausible claim for negligence based on any UNE policy or provision of the UNE student handbook. As a result, Defendant is entitled to dismissal of Count III.

### D. Breach of Contract (Count VII)

In Count VII, Plaintiff again invokes the UNE student handbook,[5] asserting it amounts to "a contract" between Anderson and UNE under which the school was required to provide Anderson "a professional academic atmosphere with mature competent professors." (Am. Compl., PageID # 99.) He further pleads that "the quid pro quo harassment, the false portrayal of him as a

---

[5] The Court notes that the referenced handbook is not part of the current record. Thus, this case is procedurally distinguishable from Montany v. University of New England, No. 2:15-cv-89-JDL, 2016 WL 3566200 (D. Me. June 24, 2016), report and recommendation adopted, 2016 WL 4442780 (D. Me. Aug. 22, 2016), aff'd 858 F.3d 34 (1st Cir. 2017), where the district court granted UNE summary judgment on a breach of contract claim but had the opportunity to review the relevant language in the handbook. See Montany, 2016 WL 3566200, at *3 & *9; cf. Montany, 858 F.3d at 41 (concluding that in opposing summary judgment plaintiff had abandoned her theory of breach of contract based on the student handbook).

threat on campus, the various acts of retaliation, his unjust eviction from his dorm and campus, [and] the faulty investigation" were breaches of the handbook. (Id.) Defendant seeks dismissal arguing that "the breach of contract claim is too indefinite and vague to be enforceable and does not plausibly allege mutual assent between the parties." (Def. Reply, PageID # 149.)

The existence of a contractual relationship between a university and its students has been described as "a point of law well-settled in the First Circuit and Maine." Gomes v. University of Me. Sys., 304 F. Supp. 2d 117, 130 (D. Me. 2004) (citing Mangla v. Brown Univ., 135 F.3d 80, 83 (1st Cir. 1998), Goodman v. President & Trustees of Bowdoin Coll., F. Supp. 2d 40, 55 (D. Me. 2001) & Tobin v. University of Me. Sys., 59 F. Supp. 2d 87, 95 (D. Me. 1999)).  As Plaintiff highlights in opposing dismissal of his breach of contract claim, Judge Woodcock declined to dismiss a breach of contract claim brought by a former student against a for-profit nursing school in Mason v. Intercoast Career Inst., No. 2:14-CV-00377-JAW, 2015 WL 925915 (D. Me. Mar. 4, 2015). (See Pl. Response (ECF No. 21), PageID # 128.) In denying the request for dismissal and a more definite statement, Mason cited a number of "factual questions that will be in play in . . . on the breach of contract count." Id. at *5. Likewise, the breach of contract claim pled in Plaintiff's Amended Complaint undoubtedly raises many factual questions and it remains to be seen whether Anderson can put forth trialworthy answers. However, given the existing precedents, the Court cannot say that his breach of contract claim is implausible. See, e.g., Sonoiki v. Harvard Univ., -- F.4th ---, 2022 WL 2128619, at *7-*14 (1st Cir. June 14, 2022) (concluding that plaintiff stated a "plausible breach of contract claim" based on various provisions of the student handbook). Thus, the Court DENIES Defendant's Motion to the extent it seeks dismissal of Count VII.

## IV.  CONCLUSION

Therefore, the Court GRANTS IN PART Defendant's Motion and hereby DISMISSES Counts III & V of the Amended Complaint.  With respect to Counts VI & VII, the Court DENIES Defendant's Motion.

SO ORDERED.

                                    /s/ George Z. Singal
                                    United States District Judge

Dated this 29th day of June, 2022.